# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ELIZEBETH FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:21-cv-00310 |
| v. ) | Judge Trauger |
| ) | |
| WENDY'S OF BOWLING ) | |
| GREEN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff Elizebeth Ford filed a pro se employment discrimination complaint against Wendy's of Bowling Green ("WBG"), Bridgeman Group ("Bridgeman"), Ulysses Bridgeman, Jimmy Head, Derrick Garcia, Sandy Lackey, and Rodney Boston. (Doc. No. 1.) The plaintiff also filed an application to proceed in this court without prepaying fees and costs. (Doc. No. 6.) The case is before the court for a ruling on the application and initial review of the complaint.

**I.      Application for Leave to Proceed Without Paying Fees and Costs**

The court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). The plaintiff is a single 61-year-old woman with a modest average monthly income derived from variable work as a Lyft driver. (Doc. No. 6 at 1.) The plaintiff reports monthly expenses that exceed her income, including costs associated with her work vehicle and regular debt payments. (*Id*. at 1, 4.) In addition, the plaintiff has no significant cash reserves or assets. (*Id*.

at 2-3.) Because it appears that the plaintiff cannot pay the full civil filing fee in advance without undue hardship, the application will be granted.[1]

## II. Initial Review of the Complaint

The court must conduct an initial review of the complaint and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

### A. Standard of Review

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Brown v. Mastauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.").

In reviewing the complaint, the court applies the standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir.

---

[1] Because the application was timely filed, the plaintiff's "Pleading for More Time" (Doc. No. 7), construed by the Court as a motion for extension of time concerning the application, will be denied as moot.

2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The court must then consider whether the factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true "unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

B. **Factual Allegations**

Liberally construing the complaint, the court identifies the following factual allegations. The plaintiff, a Black female born in 1959, was hired by Bridgeman, a Black-owned company, to work at a Wendy's restaurant in Nashville, Tennessee. (Doc. No. 1 at 4, 8.) The plaintiff reported to a Black supervisor named Rodney Boston. (*Id*.) Boston promised to promote the plaintiff when an opportunity became available. (*Id*. at 8.) However, the plaintiff discovered that Bridgeman allows "discrimination in the workplace" and treats Black employees differently than "other people" regarding "respect, schedules, promot[ions], [and] pay raises." (*Id*.) The plaintiff eventually learned from Boston that there are no "real" growth opportunities for Black employees at Bridgeman. (*Id*. at 8-9.) Boston also revealed that Bridgeman wants Black employees, including the plaintiff, to only work at the store level, not as office supervisors or management. (*Id*.) Boston told the plaintiff that "she was here so the Black-own[ed] [company] can sa[y] [it has] one Black in Nash[ville]." (*Id*. at 9.) The complaint also alleges that Bridgeman, through Boston, discriminated against and took advantage of the plaintiff by allowing "male and younger

3

management" to leave early, work preferred schedules, and get pay raises. (*Id*.) When confronted, Boston promised to secure the pay raises for the plaintiff; however, he did not do so. (*Id*.)

The plaintiff formally complained by notifying the "chain of command" that she was "being discriminated against." (*Id*. at 10.) At first, Bridgeman did nothing in response. (*Id*.) Eventually, director of operations Jimmy Head called a meeting with the plaintiff and other management. (*Id*.) At the meeting, Head belittled, mocked, and acted in a racist manner towards the plaintiff. (*Id*.) Head threatened that if the plaintiff continued to complain, he would "send her to the worst store in the [company]," where she would "be on all nights and hardship." (*Id*.) Head further explained to the plaintiff that she "didn't have it so bad," but "that would happen" when she was "sent to the worst store." (*Id*.) Head expressly warned the plaintiff that "he would show [her]." (*Id*.) After that time, the plaintiff received increasingly problematic work assignments. (*Id*. at 12.) She was sent to poorly performing stores, given difficult workloads, and "cuss[ed] out" by white management. (*Id*.) The plaintiff attempted to complain about this ongoing "discriminat[ion] and abus[e]," but she was ignored by human resources. (*Id*.)

### C. Analysis

The plaintiff brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA").[2] (*Id*. at 3). The plaintiff checked boxes to indicate that she complains about the following discriminatory conduct: failure to promote; failure to accommodate; unequal terms and conditions of employment; and retaliation. (*Id*. at 4). In addition, the plaintiff

---

[2] The plaintiff has provided a re-issued right-to-sue notice from the EEOC that references the content of the EEOC's original right-to-sue notice. (Doc. No. 1-3.) This submission is sufficient to demonstrate exhaustion of administrative remedies for purposes of initial review.

asserts that the defendants discriminated against her based on race, color, gender, religion, age, and disability (i.e., heart condition). (*Id.*)

Title VII, the ADEA, and the ADA are key parts of "the federal policy of prohibiting wrongful discrimination in the [n]ation's workplaces." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). First, Title VII makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Next, the ADEA prohibits an employer from discriminating against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Finally, the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" regarding hiring, advancement, training, termination, employee compensation, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013).

### 1. Proper Defendant

As a threshold matter, the court addresses the proper defendant to the plaintiff's claims. "It is well-established in the Sixth Circuit that an individual employee or supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII." *Smith v. Bd. of Tr. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 891 (6th Cir. 2010) (collecting cases). And "Title VII, the ADEA, and the ADA define 'employer' essentially the same way." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) (explaining that the statutes each "limit liability to the employer"). Thus, an individual defendant "is not included within the statutory definition of employer under Title VII and its sister civil rights statutes, and . . . cannot

be held personally liable for discrimination." *Johnson v. East Tenn. St. Univ.*, 229 F.3d 1152 (Table), 2000 WL 1182792, at *2 (6th Cir. 2000) (citing *Wathen*, 115 F.3d at 405). Rather, the proper defendant for the plaintiff's claims is her employer. *See, e.g.*, *Wright v. MNPS*, No. 3:19-cv-00953, 2020 WL 1082755, at *3 (M.D. Tenn. Mar. 6, 2020). Accordingly, individual defendants Ulysses Bridgeman, Jimmy Head, Derrick Garcia, Sandy Lackey, and Rodney Boston will be dismissed.[3]

### 2. Title VII and ADEA Discrimination Claims

For a Title VII discrimination claim, the plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was treated differently from similarly situated individuals outside of her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)). Importantly, however, the plaintiff need not establish all the prima facie elements of a Title VII claim at this stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Rather, the plaintiff need only set forth a short and plain statement of her claims and allege facts sufficient to plausibly suggest an entitlement to relief. *Williams*, 631 F.3d at 383; *see also, e.g., Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012) (explaining that as long as the complaint "provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)").

The complaint alleges that the plaintiff's employer had a practice of discriminating against Black employees and female employees in promotion, pay and benefits, and work assignments, and that the company treated the plaintiff, a qualified Black woman, differently from white

---

[3] Because the complaint is imprecise regarding the corporate identity of the plaintiff's employer, the court allows both Bridgeman and WBG to remain as defendants at this time.

employees and male employees through unequal pay, denied promotions, and disparate work assignments. An adverse employment action can involve, for example, a failure to promote, material change in salary or benefits, or reassignment with different responsibilities. *See Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 522-23 (6th Cir. 2015) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The plaintiff has, therefore, plausibly alleged that she is entitled to relief for discrimination based on race and gender. These Title VII claims may proceed for factual development.[4]

For an ADEA discrimination claim, the plaintiff must demonstrate that (1) she is a member of the protected class, that is, she is at least forty years of age; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated employees outside the protected class. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). A plaintiff may satisfy the plausibility standard for an ADEA claim by alleging specific "'facts regarding the names, relative ages, or qualifications' of the younger employees who allegedly assumed [her] job duties," or by providing "examples of how those employees were treated more favorably." *Smith v. Wrigley Mfg. Co. LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (quoting *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015)). Although the complaint does not identify or provide specific information about younger employees that allegedly received better treatment, it does allege specific examples of how younger employees were treated more favorably (e.g., permissive supervision, preferential work schedules, and unequal pay). At this very early stage in the case, the court finds that these allegations support a colorable claim that the plaintiff was discriminated against because of her age. The plaintiff's ADEA discrimination claim may therefore proceed for further development.

---

[4] The plaintiff's Title VII claim based on religion, noted by a check-box on the form complaint, will be dismissed because it not supported by any allegations.

### 3. Title VII and ADEA Retaliation Claims

Next, the plaintiff brings Title VII and ADEA retaliation claims. Title VII makes it unlawful to retaliate against employees for engaging in protected conduct – that is, opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). The ADEA similarly prohibits employers from retaliating against an employee for opposing or reporting age discrimination. 29 U.S.C. § 623(d). To state a retaliation claim, the plaintiff must plausibly allege that: (1) she engaged in protected conduct under Title VII or the ADEA; (2) her employer had knowledge of the protected activity; (3) the employer thereafter took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (Title VII); *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)) (ADEA).

The complaint alleges that the plaintiff formally complained to the "chain of command" at her employer concerning discrimination. For the purposes of initial review, the court infers that the plaintiff presented company officials with the same complaints of discrimination that she presents here. The complaint further alleges that in response company officials embarrassed and harassed the plaintiff, threatened the plaintiff with specific retaliatory acts, and, when the plaintiff continued to ask for an end to the discrimination, changed the plaintiff's work assignments to her substantial detriment. Accordingly, the plaintiff has plausibly alleged that she engaged in protected activity under Title VII and the ADEA; that the employer was aware of the complaints; and that the employer took an adverse employment action that was causally connected to the complaints. Accordingly, the plaintiff has stated colorable Title VII and ADEA retaliation claims.

### 4. ADA Claims

Finally, the court turns first to the plaintiff's ADA claims. For an ADA disability discrimination claim, a plaintiff must demonstrate that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) her employer knew or had reason to know of her disability; and (5) her position remained open while her employer sought other applicants or replaced her. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019); *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016). The only reference to the plaintiff's disability in the complaint, however, is the statement: "I have a heart condition. Sad. But I am treated poorly when I be sick, but other manager with health issue be treated good it's understood." (Doc. No. 1 at 4.) The complaint does not allege, as required, that the plaintiff suffered any specific adverse employment action. *Babb*, 942 F.3d at 320. Nor does the complaint allege that the plaintiff sought or was denied an accommodation. *See Brumley v. United Parcel Serv., Inc.*, 900 F.3d 834, 839 (6th Cir. 2018). In short, this non-specific allegation does not contain enough factual matter to put defendants on notice of the plaintiff's specific claim or plausibly suggest that the plaintiff is entitled to relief for discrimination under the ADA.

The ADA prohibits retaliation by providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a retaliation claim, the plaintiff must plausibly allege that: (1) she engaged in protected conduct under the ADA; (2) her employer had knowledge of the protected activity; (3) the employer thereafter took an employment action adverse to her; and (4) there was a causal connection

between the protected activity and the adverse employment action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). As discussed above, the complaint does not allege that the plaintiff suffered an adverse employment action based on disability. In addition, the complaint does not allege that the plaintiff engaged in any protected activity under the ADA. Thus, the plaintiff has not stated colorable ADA retaliation claim. The plaintiff's ADA claims will, therefore, be dismissed.

### III. Conclusion

For these reasons, the court concludes that the plaintiff has stated non-frivolous claims against Bridgeman and WBG for discrimination based on race and gender under Title VII, discrimination based on age under the ADEA, and retaliation under Title VII and the ADEA. All other claims and defendants will be dismissed.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge